IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW BOEHM, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 05-1291 |
| | ) | Judge Donetta W. Ambrose/ |
| COMMISSIONER OF SOCIAL SECURITY, | ) | Magistrate Judge Amy Reynolds Hay |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully submitted that the Motion for Summary Judgment filed by Plaintiff [Dkt. No. 10] be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant [Dkt. No. 12] be granted and that the decision of the Commissioner of Social Security denying Plaintiff's application for childhood disability benefits and supplemental security income be affirmed.

II.   REPORT

A.   **Procedural History**

Plaintiff, Andrew Boehm, brought this action under 42 U.S.C. § 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for childhood disability benefits ("CDB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.

Plaintiff protectively filed applications for CDB and SSI on July 30, 2003, claiming disability since November 1, 2001, the month he attained age eighteen (Tr. 66-67, 127, 387-90). The state agency denied his claims and Plaintiff subsequently requested a hearing before an

administrative law judge ("ALJ") (Tr. 33-38, 40-41, 391-95).

A hearing was held on October 13, 2004, at which time Plaintiff, who was represented by counsel, and a vocational expert ("VE") were called to testify (Tr. 401-14). The ALJ issued a decision on February 25, 2005, finding that Plaintiff retained the capacity to perform a significant number of jobs in the national economy and, therefore, was not disabled under the Act (Tr. 16-25). The Appeals Council denied Plaintiff's request for review on August 5, 2005, making the ALJ's decision the final decision of the Commissioner (Tr. 8-10).

### B. Factual Background

Plaintiff was born on November 23, 1983, and, thus, was twenty years old at the time of the hearing (Tr. 403). Plaintiff dropped out of high school after eighth grade having thrice failed to successfully complete ninth grade special education classes (Tr. 404). Plaintiff has no past relevant work experience and claimed disability as of November 2001 due to rheumatoid arthritis, back pain, depression, attention deficit hyperactivity disorder ("ADHD"), and a learning disorder (Tr. 66, 107, 114, 127, 139, 143).[1]

### C. Medical History

Plaintiff underwent a neuropsychological evaluation by Michael McCue, Ph.D., on October 29, 2001 (Tr. 216-28). Dr. McCue reported that Plaintiff showed no undue frustration or anxiety, was able to establish adequate rapport and maintain his focus of attention (Tr. 218). Dr. McCue noted that Plaintiff was aware of his cognitive limitations and found that they appeared related to a lack of formal education rather than a lack of basic abilities (Tr. 218). Dr. McCue also indicated that Plaintiff's conversational speech was relatively fluent and that his auditory

---

[1] Plaintiff has conceded that the ALJ's findings with respect to his physical limitations are supported by substantial evidence and, thus, only his mental impairments are at issue here. See Plaintiff's Brief in Support of Motion for Summary Judgment, p. 2.

comprehension was adequate for all directives regardless of their complexity (Tr. 218).

Formal assessment of Plaintiff's attention and concentration, however, revealed low average to average skills and evaluation of his memory revealed low average verbal, incidental and prospective recall and significantly compromised nonverbal skills (Tr. 221). Formal assessment of auditory comprehension was in the low average range and showed that Plaintiff had significant difficulty repeating increasingly complex verbal information (Tr. 221-22). Dr. McCue also stated that Plaintiff's personality assessment suggested mild to moderate depression (Tr. 222).

Dr. McCue's impression was that Plaintiff possessed average intellectual capabilities in the verbal realm but that he had significant difficulties in nonverbal skills (Tr. 223). He also found that Plaintiff's attention and verbal memory were intact, that he has strong language skills but that Plaintiff had difficulties with complex executive skills (Tr. 223).

Dr. McCue concluded that Plaintiff had strong verbal abilities, intact verbal intelligence and ability to understand and utilize language and that these strengths could be capitalized upon in vocational rehabilitation. Although recognizing that Plaintiff had significant limitations in executive skills, nonverbal memory, learning and problem solving, which were likely to impact him negatively in training and employment situations, Dr. McCue made a series of recommendations to address those limitations (Tr. 223-25). Thus, notwithstanding Plaintiff's learning disabilities, Dr. McCue found that Plaintiff would benefit from vocational rehabilitation services and that, given such intervention, he had an excellent chance for success (Tr. 225).

Plaintiff sought treatment at Mercy Behavioral Health ("MBH") on February 21, 2002, reporting feelings of stress and mild depression (Tr. 230-36). The examining therapist indicated that Plaintiff was alert and oriented, that he coherently engaged in conversation and remained attentive with normal eye contact throughout the assessment (Tr. 235). It was also noted

3

that although Plaintiff's affect was flat, his appearance, behavior and motor activity, speech, thought process, thought content and mental capacities were all normal (Tr. 235). Plaintiff indicated that he was willing to undergo therapy (Tr. 236).

Plaintiff presented again at MBH on September 9, 2003, reporting feeling stressed due to family conflict (Tr. 341). The assessment form indicates that Plaintiff was last there over a year earlier in April of 2002, and that he coherently engaged in conversation and remained attentive throughout his appointment (Tr. 341). Plaintiff reported that he becomes easily angered but that he does not get physically aggressive and requested individual therapy (Tr. 341).

Plaintiff underwent a consultive psychological evaluation on September 18, 2003 (Tr. 251-57). Charles M. Cohen, Ph.D., noted that Plaintiff reported feeling sad sometimes and relatively good at other times and that he has been treated for depression at MBH off and on for the past four years (Tr. 251-52). Plaintiff also reported that he has never taken medication for ADHD and that, although he has taken Effexor and Paxil in the past, he has not taken them for a year and a half and was not currently taking any other medications (Tr. 251).

On examination, Dr. Cohen reported that Plaintiff's eyes did not focus very well, that his eye contact was intermittent and his affect was mildly blunted (Tr. 252). Although he indicated that Plaintiff appeared mildly depressed he also stated that Plaintiff denied suicidal, homicidal or paranoid ideas, that he did not describe any manic episodes and that his speech was spontaneous (Tr. 252). As well, Dr. Cohen found that Plaintiff's "general fund of information" appeared below normal and that his judgment was poor but that his abstract reasoning was near average and that his remote and recent past memory were intact (Tr. 252).

With respect to Plaintiff's daily activities, Dr. Cohen noted that Plaintiff cleans his own room, takes out the garbage, cooks for himself, takes care of his personal grooming and takes a

bus by himself (Tr. 253). Plaintiff reported to Dr. Cohen that he spends most of his time watching television and occasionally spends time over at his one friend's house but that he has no other social life, in part, because he has no money (Tr. 251, 253). He also indicated, however, that he had a girlfriend for about seven months but that she had just broken up with him which precipitated his current depression (Tr. 251, 253). Dr. Cohen reported that Plaintiff's concentration and task persistence were fair as was his ability to manage stress (Tr. 253).

Dr. Cohen diagnosed cognitive disorder, NOS, learning disorder, noted a history of ADHD from a previous report, and dysthymia (Tr. 253). Dr. Cohen stated that inattentiveness appeared to be a mild to moderate problem but noted that he did not observe any hyperactivity (Tr. 253). As well, Dr. Cohen opined that although Plaintiff had problems with learning and concentration in addition to some depressive symptoms, they did not appear to be so severe as to preclude all employment. Rather, it was Dr. Cohen's opinion that Plaintiff would be capable of coming to work on time, dealing reasonably well with authority figures and peers, and performing simple repetitive tasks in a relatively low stressful environment (Tr. 253). Dr. Cohen did allow, however, that Plaintiff should probably not be working with the public (Tr. 253).

A state agency psychological consultant, Larry D. Smith, Ph.D., reviewed the evidence of Plaintiff's depression and other mental impairments on November 6, 2003 (Tr. 280-96). Dr. Smith reported that the medical evidence established a medically determinable impairment of cognitive disorder, NOS, ADHD and dysthymia and noted that Plaintiff had no hospitalizations due to his mental impairments (Tr. 295). Dr. Smith noted that although Plaintiff's frustration tolerance was low, his basic memory processes was intact, that he was able to carry out short and simple instructions, and able to make simple decisions (Tr. 295). Finding their opinions consistent with his own residual functional capacity assessment, Dr. Smith gave great weight to both Dr. Cohen's and

Dr. McCue's reports and concluded that, while Plaintiff's limitations are significant, they are not so severe as to preclude Plaintiff from meeting the basic mental demands of competitive, routine work on a sustained basis (Tr. 295-96).

Plaintiff presented at MBH again on January 14, 2004 (Tr. 354-357), to "get stuff off [his] chest" and to cope with feelings of depression (Tr. 356).

Plaintiff self referred himself to MBH on February 19, 2004, for depression and crying spells and was evaluated by Nadeen Ahmed, M.D. (Tr. 349-351). Plaintiff reported that he has been diagnosed with learning disabilities since a young age and cannot hold a job because he has difficulty reading and, thus, cannot follow written directions (Tr. 349, 350). He stated that until recently he had been treated with Effexor and Paxil but that they were ineffective (Tr. 349). Plaintiff also reported that he had relationships in the past and had no difficulty socializing (Tr. 350). Dr. Ahmed found Plaintiff to be alert and oriented with a constricted affect and a tendency to avoid eye contact. His speech was slow and relevant (Tr. 350). Dr. Ahmed also reported that there were no auditory or visual hallucinations and that Plaintiff did not appear hypervigilant (Tr. 350). Plaintiff's psychomotor activity appeared normal, his thought process appeared coherent and his concentration, memory and other cognitive functioning were intact (Tr. 350). Dr. Ahmed diagnosed Plaintiff with major depression, moderately recurrent, dysthymia, GAD, and learning disorder by history. A Global Assessment of Functioning ("GAF") score of 55, however, was also assessed (Tr. 350).[2] Dr. Ahmed prescribed Lexapro and stated that Plaintiff would be continued in counseling with a therapist (Tr. 351).

---

[2] A GAF in the 51 to 60 range indicates some moderate symptoms (e.g., flat affect and circumstantial speech and occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers and co-workers.) Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th ed. 1994).

In a progress report dated April 14, 2004, Dr. Ahmed and a treating therapist indicated that Plaintiff was somewhat improved and that he was beginning to verbalize his feelings and trying positive coping strategies to manage his anger better (Tr. 352-53).

Dr. Ahmed completed a Mental Impairment Questionnaire and an Assessment of Ability to do Work-Related Activities on June 9, 2004 (Tr. 358-62), wherein he indicated that Plaintiff had symptoms of sleep and mood disturbance, emotional lability and anhedonia or pervasive loss of interest but no signs of poor memory, difficulty thinking or concentrating, social withdrawal, flat effect, generalized persistent anxiety or irritability (Tr. 358). He also indicated that Plaintiff had no restrictions of activities of daily living, had moderate difficulties in maintaining social functioning, often had deficiencies of concentration, persistence or pace and repeated episodes of deterioration in work or work like settings (Tr. 359). With respect to Plaintiff's ability to make occupational adjustments, Dr. Ahmed indicated that Plaintiff was seriously limited, but not precluded, in his ability to relate to co-workers, deal with the public, interact with supervisors and deal with work stresses but was fairly able to follow work rules and had good ability to function independently and maintain attention and/or concentration (Tr. 360). As well, Dr. Ahmed indicted that although Plaintiff was seriously limited, but not precluded, in his ability to carry out complex job instructions he could understand, remember and carry out detailed instructions that were not complex fairly well and could understand, remember and carry out simple instructions (Tr. 361).

    **D.**     **Hearing Testimony and ALJ Decision**

At the administrative hearing, Plaintiff testified that he worked for about a month and a half as a stock boy at a grocery store in 2001 but was fired because be couldn't concentrate on his work and couldn't bend over or stand or sit for a long period of time (Tr. 404-05). Plaintiff testified that he also worked at a deli making sandwiches for about a month until it went out of business and

7

at Kentucky Fried Chicken until they fired him indicating that he had difficulty at both jobs concentrating and filling orders correctly (Tr. 405).

It was also Plaintiff's testimony that he has a learning disability stemming from the fact that as an infant his "soft spot was growing too fast," and that he was born with a misshapen skull which required surgery. The surgery, Plaintiff allowed, caused him to have "significant brain damage" including ADD and ADHD and that his concentration and ability to focus on one thing or understand what he's supposed to be doing has been affected (Tr. 405-06).

Plaintiff further testified that he was being treated for depression and that almost every day, for no apparent reason, he will start to get very unhappy or in a bad mood or will cry. Sometimes it will last for five minutes or an hour depending on his mood (Tr. 408).

Plaintiff indicated that he has a fear of being around people and that when too many people are around he gets very nervous and a stomach ache (Tr. 410).

As well, the VE testified that given the short duration of his jobs, Plaintiff has no past work experience (Tr. 411). The ALJ then asked the VE to assume a twenty year old individual with an eighth grade special education, having no physical restrictions but "from a non-exertional standpoint" would be capable of performing simple repetitive tasks in a relatively low stressful environment and not working with the public (Tr. 411). Based upon this hypothetical question, the VE testified that such an individual would be capable of performing light jobs that exist in significant numbers in the national economy such as a stock clerk and a hotel/motel or office cleaner (Tr. 411). Plaintiff's counsel added the further limitations as documented by Dr. Ahmed, Plaintiff's treating psychiatrist, that he is seriously limited but not precluded in his ability to relate to co-workers, deal with the public, interact with supervisors and deal with work stresses (Tr. 412). Under those circumstances, the VE testified that the jobs he already identified are ones in which the

8

individual would not be around co-workers and that they are low stress positions requiring simple routine work without specific quotas (Tr. 412). He further testified that if the individual were nevertheless unable to handle the routine work there would be no jobs that he could perform and that the individual couldn't fight with a supervisor or he'd lose his job (Tr. 412).

Based on this evidence the ALJ found that Plaintiff's cognitive disorder, NOS, learning disorder and dysthymia are "severe" but do not meet, either singly or in combination, any of the listed impairments in Appendix 1, Subpart P (Tr. 24). As well, the ALJ found that Plaintiff had a limited special education, no past work experience and was capable of performing simple, repetitive tasks in a low stress setting and without public contact (Tr. 24). The ALJ concluded that although Plaintiff's non-exertional limitations do not allow him to perform a full range of work at all exertional levels there were still a significant number of jobs in the national economy that he could perform and, thus, he was not disabled as defined under the Act (tr. 24).

### E.  Standard of Review

Presently before the Court are the parties' cross-motions for summary judgment. In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

### F. Statutory and Regulatory Framework

The Act provides that a child, age 18 or older, is entitled to CDB on the social security record of a parent wage earner if, <u>inter</u> <u>alia</u>, the child has a disability that began before he became age 22, 42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350(a)(5) (2005). The definition of "disability" used to determine whether a child, age 18 or older, is disabled for purposes of CDB is the same definition used to determine whether an individual is disabled for purposes of SSI as an adult. <u>See</u> 42 U.S.C. § 1382c(a)(3).

Disability is defined under the Act as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(3)(A). The Act further provides that the individual will be found disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

A five-step process is used to determine disability eligibility. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920 (2005).[3] Here, the ALJ determined that Plaintiff was not disabled at the fifth step, which requires the Commissioner to prove that, considering the claimant's residual functional capacity,[4] age, education, and past work experience, he can perform work that exists in significant

---

[3] The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.

[4] A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 40 (3d Cir. 2001).

numbers in the regional or national economy.  See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

### G.    Discussion

Plaintiff first argues that the ALJ erred by rejecting or considering only selective portions of the opinion of his treating psychiatrist, Dr. Ahmed, in favor of the state agency and consulting examiners.  Plaintiff specifically faults the ALJ for not mentioning Dr. Ahmed's findings that Plaintiff was often unable to complete tasks because he could not concentrate or that he had decompensated during work or work like situations at least three times.

While it is undisputed that a treating physician's opinion is entitled to substantial weight it is also clear that determinations regarding a claimant's residual functional capacity and whether he or she is disabled as defined under the Act is reserved to the ALJ.  Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).  See 20 C.F.R. § 404.1527(d); 416.927(d)  (2005).  Although the ALJ is required to consider the opinions from treating physicians as well as other examining medical sources, the ultimate decision is that of the Commissioner.  See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1990).

Moreover, to be afforded controlling weight, the opinion of a physician must be "well supported by medically acceptable clinical and laboratory diagnostic techniques ... and [be] not inconsistent with the other substantial evidence."  Fargnoli v. Massanari, 247 F.3d at 43.  In determining what weight, if any, medical opinions should be given, the degree to which the opinion is supported by other relevant medical evidence and is consistent with the record as a whole should be considered.   20 C.F.R. §§ 404.1527(d)(1)-(6); 416.927(d)(1)-(6).  See Williams v. Sullivan, 970 F.3d 1178, 1187 (3d Cir. 1992).

Here, the difficulty with Plaintiff's argument is that review of the ALJ's decision

demonstrates that the ALJ did not reject Dr. Ahmed's opinion but, to the contrary, expressly accepted it. Indeed, with respect to Dr. Ahmed's evaluation and opinion, the ALJ stated that:

> A psychiatric evaluation was conducted on February 19, 2004, by Nadeen Ahmed, M.D., of Mercy Behavioral Health. Dr. Ahmed reported that the claimant was alert and fully oriented. His affect was fairly constricted and he avoided eye contact. However, Dr. Ahmed found that concentration, memory and cognitive functioning were intact. Thought processes were relevant. The claimant denied hallucinations, delusions or paranoia. Dr. Ahmed's diagnostic impression was major depression, moderately recurrent, dysthymia, and a learning disorder by history. Dr. Ahmed assessed a GAF score of 55, indicative of moderate symptoms and limitations. Dr. Ahmed opined that the claimant's ability to relate to co-workers, deal with the public, interact with supervisors and deal with work stresses was seriously limited, but not precluded . . . .
>
> *The undersigned accepts Dr. Ahmed's opinion* as it is supported by the record, including the clinical findings and conclusions of Dr. Cohen, an examining psychologist. Dr. Ahmed's assessment would not preclude the claimant from performing low stress work involving simple, repetitive tasks and avoiding public contact. In addition, Dr. Ahmed is a treating source, who has seen the claimant on a regular basis and is best able to provide a detailed, longitudinal picture of the claimant's impairment and resulting limitations.

(Tr. 21-22) (emphasis added). Thus, it not only appears that the ALJ thoroughly reviewed and accepted Dr. Ahmed's opinion but found it consistent with his determination that Plaintiff had the residual functional capacity to perform low stress work involving simple repetitive tasks that did not involve working with the public (Tr. 22, 360-61).

The ALJ also found Dr. Ahmed's opinion consistent with the other evidence of record including the conclusion of Dr. Cohen who recognized that Plaintiff had problems with learning and concentration but found that they were not so severe as to preclude all employment as Plaintiff was capable of coming to work on time and could deal reasonably well with authority figures and peers. Dr. Cohen also allowed that Plaintiff should probably not be working with the public (Tr. 253, 255-56).

12

Plaintiff nevertheless argues that the ALJ's failure to specifically address Dr. Ahmed's findings that Plaintiff often experienced deficiencies in concentration, persistence and pace resulting in failure to complete tasks in a timely manner and that he had "marked" functional limitations as evidenced by at least three episodes of deterioration or decomposition in work or work like settings (Tr. 359), evidences that the ALJ's review of Dr. Ahmed's opinion was "highly selective" and renders the ALJ's decision incomplete thereby requiring remand.[5] We disagree.

As argued by the Commissioner, Dr. Ahmed's findings in this regard must be viewed in context of the entire record including Dr. Ahmed's other reports which show that on February 19, 2004, he found that Plaintiff's concentration, memory and other cognitive functioning were intact and assessed Plaintiff's GAF at 55, which is indicative of moderate symptoms (Tr. 350). Two months later, on April 14, 2004, Dr. Ahmed reported that Plaintiff was somewhat improved (Tr. 352). Then, less than two months after that, on June 9, 2004, Dr. Ahmed again reported a GAF of 55 and indicated on a mental impairment questionnaire that Plaintiff often had deficiencies in concentration, persistence and pace. Review of the questionnaire, however, shows that "often" signifies a moderate limitation and not a "marked" or "extreme" limitation (Tr. 359).[6] As well, on the mental assessment form that Dr. Ahmed filled out the same day, while indicating that Plaintiff was seriously limited in relating to co-workers, dealing with the public, interacting with supervisors and dealing with work stresses, he also indicated that Plaintiff's ability to follow work rules and use

---

[5]   We note here that Plaintiff has seemingly conceded that Dr. Cohen's opinion and that of Dr. Smith, the state agency examiner, would have provided the basis for finding that Plaintiff was not disabled at the time it was rendered. See Plaintiff Brief in Support of Motion for Summary Judgment, p. 13.

[6]   Moreover, on the same questionnaire where Dr. Ahmed was asked to check off which signs and symptoms Plaintiff was experiencing, the boxes next to "difficulty thinking or concentrating," "poor memory," "social withdrawal," "flat affect," and "generalized persistent anxiety or irritability" are notably blank (Tr. 358).

13

judgment was fair and that his ability to maintain attention and concentration and function independently was good (Tr. 360).  He also indicated that Plaintiff's ability to understand, remember, and carry out simple job instructions was good and that his ability to understand, remember, and carry out detailed job instructions was fair (Tr. 361).  Moreover, although he found that Plaintiff's ability to understand, remember and carry out complex job instructions was seriously limited he did not find that he had poor or no ability to do so (Tr. 361).  Thus, when Dr. Ahmed's findings are viewed as a whole the ALJ's determination that they supported his own conclusion that Plaintiff's limitations, while severe, were not so severe as to preclude him from engaging in any substantial gainful activity and that he retained the mental RFC to perform low stress work involving simple repetitive tasks that did not involve working with the public, is amply supported by the record.

   Moreover, as found by the ALJ, Dr. Ahmed's findings are also consistent with the other evidence of record.  As previously discussed, while Dr. Cohen recognized that Plaintiff had problems with learning and concentration, he found that they were not so severe as to preclude all employment but, rather, he would be capable of coming to work on time, deal reasonably well with authority figures and peers, but should probably not be working with the public (Tr. 253, 255-56).

   As well, Dr. Smith, the state agency psychological consultant, found that, although Plaintiff's frustration tolerance was low, his basic memory processes was intact, he was able to carry out short and simple instructions and able to make simple decisions concluding that, while Plaintiff's limitations are significant, they are not so severe as to preclude Plaintiff from meeting the basic mental demands of competitive, routine work on a sustained basis (Tr. 295-96).

   Finally, after conducting formal assessments of Plaintiff's attention and concentration and auditory comprehension, Dr. McCue's impression was that Plaintiff possessed average intellectual capabilities in the verbal realm but that he had significant difficulties in nonverbal skills

(Tr. 223). He also found that Plaintiff's attention and verbal memory were intact, that he had strong language skills but that Plaintiff had difficulties with complex executive skills. Dr. Smith concluded that Plaintiff had strong verbal abilities, intact verbal intelligence and ability to understand and utilize language and that these strengths could be capitalized upon in vocational rehabilitation. Although he, too, recognized that Plaintiff had significant limitations in executive skills, nonverbal memory, learning and problem solving which were likely to impact him negatively in training and employment situations, Dr. McCue found that Plaintiff had a great chance for success with vocational rehabilitation (Tr. 225).

It therefore appears that the ALJ's findings that Dr. Ahmed's opinion was consistent with the other evidence of record and his own conclusion that Plaintiff's limitations were not so severe as to preclude him from engaging in all gainful activity, are amply supported by the record.

In this manner, Plaintiff's suggestion that the ALJ relied too heavily on the psychological opinions of Dr. Cohen and Dr. Smith is without merit. Not only are the opinions of consultive or state agency examiners properly considered but, in this case, they are consistent with Dr. Ahmed's opinion which Plaintiff complains was not relied on heavily enough. See 20 C.F.R. §§ 404.1527(d); 416.927(d). See also Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (Finding that an ALJ may consider opinions of medical or psychological consultants as they are highly qualified physicians and psychologists who are experts in social security disability evaluations.) Indeed, as previously discussed, Dr. Ahmed's findings are consistent with the ALJ's findings and that of the other examiners whofound that Plaintiff, while clearly limited, maintains the RFC to perform low stress work involving simple repetitive tasks that did not involve working with the public. Thus, Plaintiff's categorization of Dr. Ahmed's opinion as being "so obviously significant" that it "requires a different outcome," is simply not supported by the record. Indeed, nowhere in Dr. Ahmed's

15

reports does he conclude that Plaintiff is unable to engage in any gainful activity.  Moreover, Dr. Ahmed's assessment that Plaintiff often experienced deficiencies in concentration, persistence and pace resulting in failure to complete tasks in a timely manner and that he had "marked" functional limitations as evidenced by at least three episodes of deterioration or decomposition in work or work like settings, is not only consistent with the opinions of Drs. Cohen and Smith but does not provide the basis for finding that Plaintiff is incapable of performing any gainful activity.  To the contrary, Dr. Ahmed's findings suggest only that Plaintiff has severe limitations which the ALJ took into consideration when he found that Plaintiff was limited to performing simple, repetitive tasks with no public contact.  As such, Plaintiff's assertion that the ALJ's decision is founded on an incomplete assessment of Dr. Ahmed's opinion and therefore is not based upon substantial evidence, is without merit.

    Plaintiff's second argument, that the ALJ's failure to give proper weight to Dr. Ahmed's findings resulted in his failure to pose an accurate hypothetical to the VE, appears equally devoid of merit.  As previously discussed, the ALJ's conclusion that Plaintiff had the RFC to perform simple routine tasks in a low stress environment outside the purview of the public is not only consistent with but assumes the limitations described by Dr. Ahmed as well as the state agency psychiatrist and the consulting examiners.  As such, the hypothetical posed to the VE, in which he was asked whether there were any jobs that could be performed by an individual who was capable of performing simple repetitive tasks in a low stress environment and not working with the public, was an accurate portrayal of Plaintiff's limitations.  As such, the VE's opinion that there were a significant number of jobs in the national economy that such an individual could perform was properly relied on by the ALJ.  See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (Finding that a VE's opinion to be helpful or relevant it must be in response to a proper hypothetical

question that accurately portrays a claimant's "credibly established limitations.").

In this manner, <u>Burns v. Barnhart</u>, 312 F.3d 113 (3d Cir. 2002), upon which Plaintiff relies is easily distinguishable from the instant case. In <u>Burns</u>, the report disclosing the claimant's deficiencies in intellectual functioning that the claimant argued had not been taken into account in the ALJ's hypothetical, did not even exist at the time of the hearing and, thus, was clearly not encompassed in the ALJ's hypothetical. <u>Id.</u> at 122. Further, although the Court went on to find that the ALJ's use of the factor "simple repetitive one, two step tasks" was insufficient to convey the limitations set forth in the absent report and, thus, did not cure the defect in the hypothetical, it did so on the basis that the phrase "simple repetitive tasks" did not incorporate the doctor's findings that the claimant was borderline in the area of reliability, common sense, ability to function independently, use judgment, or that the claimant manifests flightiness, disassociation, oppositional tendencies, and difficulties in comprehension -- none of which is at issue here. Moreover, in so concluding, the Court distinguished the facts before it from those in <u>Howard v. Massanari</u>, 255 F.3d 577 (8th Cir. 2001), wherein the Court found that the intellectual functioning deficiencies at issue in that case were properly accounted for in the ALJ's hypothetical regarding simple and repetitive tasks. Because the intellectual functioning deficiencies at issue in <u>Massanari</u> were concentration, persistence and pace, and not the areas at issue in its case, the <u>Burns</u> Court found it distinguishable and declined to follow its counsel. <u>Burns v. Barnhart</u>, 312 F.3d at 123. The implication, of course, is that had concentration, persistence and pace been at issue in its case, the <u>Burns</u> Court would have found <u>Massanari</u> controlling.

In the instant case, Plaintiff has faulted the ALJ for failing to account for Dr. Ahmed's conclusions regarding concentration, persistence and pace, which were precisely the deficiencies at issue in <u>Massanari</u>, wherein the Court found that they were sufficiently accounted for

in a hypothetical regarding simple and repetitive tasks. Because the hypothetical presented to the VE in this case goes even beyond that presented in <u>Massanari</u>, providing for the additional limitations that the individual be limited to a low stress environment without contact with the public, it appears to adequately encompass Plaintiff's deficiencies as found by Dr. Ahmed.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; <u>Edelman v. Commissioner of Social Sec.</u>, 83 F.3d 68, 70 (3d Cir. 1996). In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence. For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   5 May, 2006


cc:   Karl E. Osterhout, Esq.
       1789 S. Braddock Avenue, Suite 570
       Pittsburgh, PA 15218

N. Leah Fink, Esq.
KUNKEL & FINK
1208 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Megan Farrell
Assistant United States Attorney
United States Attorney's Office
700 Grant Street
Suite 400
Pittsburgh, PA 15219